# UNITED STATES DISTRICT COURT
## DISTRICT OF VERMONT
## (BURLINGTON DIVISION)

| | |
|---|---|
| **FABRICIO FERREIRA GOMES**, | Case No. <u>2:25-cv-408</u> |
| Plaintiff, | |
| v. | **COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF** |
| **PAMELA BONDI**, U.S. Attorney General; | |
| **KIKA SCOTT**, Senior Official Performing the Duties of the Director, U.S. Citizenship and Immigration Services; | **ORAL ARGUMENT REQUESTED** |
| **KRISTI NOEM**, Secretary, U.S. Department of Homeland Security; | |
| **LAURA B. ZUCHOWSKI**, Director, U.S. Citizenship and Immigration Services, Vermont Service Center; | |
| **LOREN K. MILLER**, Director, U.S. Citizenship and Immigration Services, Nebraska Service Center; | |
| **TODD M. LYONS**, Acting Director, U.S. Immigration and Customs Enforcement; | |
| **PATRICIA HYDE**, Acting Director of Boston Field Office, U.S. Immigration and Customs Enforcement,, | |
| Defendants. | |

Plaintiff Fabricio Ferreira Gomes, through his attorney, alleges based upon personal knowledge, relevant documents, and information and belief, as follows:

## I.      INTRODUCTION

1.  Plaintiff Fabricio Ferreira Gomes is a Brazilian national who has applied to the United States Citizenship and Immigration Services ("USCIS") for T Nonimmigrant Visa Status as a victim of a severe form of trafficking in persons. Concurrent with that application, and in line with the T Visa implementing regulations, Plaintiff has filed an I-192 Application for Advance Permission to Enter as Nonimmigrant ("I-192 Waiver") which, if granted, would forgive inadmissibility stemming from his immigration history, including a removal order issued against him on October 9, 2001. Mr. Gomes faces imminent removal from the United States as he was detained by Immigration and Customs Enforcement ("ICE") on February 26, 2025. Removal would make him ineligible for the T Visa for which he has applied, separate him form his wife and two U.S. Citizen daughters and take him out of the country where he has resided for over 20 years.

2.  Mr. Ferreira Gomes seeks an order compelling Defendants, Pamela Bondi ("Defendant Bondi"), Kika Scott ("Defendant Scott"), Kristi Noem ("Defendant Noem"), Laura B. Zuchowski ("Defendant Zuchowski"), and Loren Miller ("Defendant Miller") (hereinafter collectively "Defendants"), to immediately adjudicate his I-914 Application for T Nonimmigrant Status and his I-192 Application for Advance Permission to Enter as a Nonimmigrant under the mandamus status, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§555(b) and 706(1). Further, Mr. Ferreira Gomes seeks an

order compelling Defendants, Todd M. Lyons ("Defendant Lyons") and Patricia Hyde

("Defendant Hyde") to coordinate with USCIS in expediting such adjudication and to prevent

his removal while such applications are pending.

## II.      JURISDICTION

3.  This action arises under the Constitution of the United States and the Immigration and

Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq*. This Court has jurisdiction pursuant to 28

U.S.C. § 1361, the mandamus statute; 28 U.S.C. § 1331, general federal question jurisdiction.

## III.     VENUE

4.  Venue in this case lies in the United States District Court for Vermont pursuant to 28 U.S.C.

§1391. Where the defendant is an officer or employee of the United States, a civil action may

be brought in any judicial district in which "a substantial part of the events or omissions giving

rise to the claim occurred […]." 28 U.S.C. § 1391(e)(1)(B). In this case, the United States

District Court for Vermont is the judicial district in which a substantial part of the events or

omissions giving rise to Plaintiff's claim occurred.

## IV.      PARTIES

5.  The Plaintiff in this action is Fabricio Ferreira Gomes, a Brazilian national who is currently

detained at Plymouth County Correctional Facility, located at 26 Long Pond Road, Plymouth,

MA 02360. Plaintiff is a survivor of two instances of labor trafficking who sought T Nonimmigrant Status by filing his applications, personal statement, and supporting document with the United States Citizenship and Immigration Services.

6.  The first Defendant in this action is Pamela Bondi, U.S. Attorney General. She is being sued in her official capacity. Defendant Bondi is the Attorney General of the United States, and she is responsible for the Department of Homeland Security ("DHS")'s implementation and enforcement of the INA.

7.  The second Defendant in this action is Kika Scott, the Senior Official Performing the Duties of the Director of U.S. Citizenship and Immigration Services. She is being sued in her official capacity. Defendant Scott is the Senior Official Performing the Duties of the Director of USCIS, a component of DHS. In that capacity, she has direct authority over all USCIS policies, procedures, and practices relating to the processing and adjudication of applications for certain I-914 applications and I-192 applications.

8.  The third Defendant in this action is Kristi Noem, Secretary of the U.S. Department of Homeland Security. She is being sued in her official capacity. Defendant Noem is the Secretary of the Department of Homeland Security, and responsible for the administration of USCIS, as well as the implementation and enforcement of the Immigration and Nationality Act ("INA").

9.  The fourth Defendant in this action is Laura B. Zuchowski, Director of the Vermont Service Center. She is being sued in her official capacity. She exercises authority over all aspects of the operation of the Vermont Service Center, including overseeing the adjudication of Plaintiff's I-914 Application for T Nonimmigrant Status and I-192 Waiver Application.

10. The fifth Defendant in this action is Loren K. Miller, Director of the Nebraska Service Center. She is being sued in her official capacity. Defendant Miller exercises authority over all aspects

of the Nebraska Service Center, including receipts and biometrics notices for I-914 Applications for T Nonimmigrant Status.

11. The sixth Defendant in this action is Todd M. Lyons, Acting Director of U.S. Immigration and Customs Enforcement. He is sued in his official capacity. As Director of ICE, Defendant Lyons is the head of the federal agency responsible for all immigration enforcement in the United States.

12. The seventh Defendant in this action is Patricia Hyde, Acting Director of the Boston Field Office of the U.S. Immigration and Customs Enforcement. She is sued in her official capacity. As Acting Director of the Boston Field Office, Defendant Hyde reviewed Plaintiff's custody determination.


## V.     LEGAL BACKGROUND


13. On October 28, 2000, Congress created a new nonimmigrant visa classification, referred to as a T Visa, through the passage of the Victims of Trafficking and Violence Protection Act of 2000 (VTVPA). See Pub. L. No. 106-386, § 1513(a)(2)(B), 114 Stat. 1464, 1533 (codified at 8 U.S.C. §§7101-2. The nonimmigrant T visa allows noncitizens who were the victims of a severe form of trafficking in persons to apply for and receive a nonimmigrant visa. 8 U.S.C. § 1101(a)(15)(T); see also 8 C.F.R. § 214.202. 22. T nonimmigrant status is described as being available to (as relevant here) a noncitizen who has a been a victim of a severe form of trafficking in persons, who is physically present in the United States on account of such trafficking, has complied with any reasonable request for assistance in the Federal, State or local investigation or prosecution of acts of trafficking and would suffer extreme hardship

involving unusual or severe harm upon removal.

14. Congress' intent in creating the T Visa program, similar to the U Visa program, was "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." 8 U.S.C. § 7101(a). The Congressional intent in providing protection to immigrant survivors of trafficking within the United States was to compel victims to come forward, as their reluctance to cooperate with law enforcement drastically impacted the government's ability to combat human trafficking. By providing survivors of human trafficking with an avenue for gaining lawful immigration status, the T visa encourages victims to cooperate with law enforcement agencies, thus strengthening relations between law enforcement and immigrant communities.

15. Although the T visa is available to noncitizens physically present in the United States, it is not available to those who survived trafficking if he or she is outside of the United States. This is because a core requirement of the T visa classification is that the noncitizen be "physically present … on account of such trafficking." 8 U.S.C. § 1101(a)(15)(T)(i)(II). This requirement has been interpreted to include noncitizens who were subject to trafficking in the past and whose presence in the United States is directly related to that victimization "regardless of the length of time that has passed between the trafficking and the filing of the Application for T nonimmigrant status." 8 C.F.R. § 214.207(a)(3)-(4). However, the regulations make clear that departure from the United States, including removal at any time after the act of trafficking renders an individual not present as a result of trafficking. 8 C.F.R. § 214.207(b).

16. To apply for a T Visa, an applicant must file with USCIS a Form I-914 Application for T Nonimmigrant Status, a signed statement by the applicant, and evidence of the following: the

applicant's victimization; physical presence in the United States on account of the trafficking; compliance with any reasonable request for assistance in a law enforcement investigation or prosecution of acts of trafficking (unless an exception due to age of the applicant or trauma applies); and evidence that the applicant would suffer extreme hardship involving unusual and severe harm upon removal. An applicant who is inadmissible may seek a waiver of such inadmissibility pursuant to 8 U.S.C. §1182(d)(13) and (d)(3)(A)(ii) by concurrently filing an I-192 Application for Advance Permission to Enter as a Nonimmigrant.

17. Upon issuance, the T Visa provides noncitizens with up to four years of nonimmigrant status and work authorization. See INA § 214(o)(7)(A); 8 C.F.R. § 214.203(a). Moreover, upon residing in the United States in T nonimmigrant status continuously for three years, noncitizens may apply for permanent residency. See 8 U.S.C. § 1255(l).

18. A noncitizen is eligible to apply for T nonimmigrant status even if he has a removal order against him. Indeed, to the extent that any immigration history may render a noncitizen inadmissible, such inadmissibility may be waived by the concurrent (or later) filing of waiver pursuant to 8 U.S.C. §1182(d)(13) and (d)(3)(A)(ii).

19. Under 8 C.F.R. § 214.205(a), USCIS will conduct an initial review to determine if the application is bona fide for all applications filed after August 28, 2024. Per 8 C.F.R. § 214.205(g)(1), if USCIS determines that an application is bona fide, it will stay the execution of any final removal order. Additionally, by operation of law, the approval of a T visa cancels any final order of removal to which the applicant may be subject. 8 C.F.R. § 214.204(o)(1).

20. Prior to January 30, 2025, ICE had acknowledged that utilizing a victim-centered approach to dealing with noncitizen crime victims "minimizes any chilling effect that civil immigration enforcement actions may have on the willingness and ability of noncitizen crime victims to

contact law enforcement, participate in investigations and prosecutions, pursue justice, and seek benefits." See Exhibit 2, ICE Directive, 11005.3 *Using a Victim-Centered Approach with Noncitizen Crime Victims*, dated August 10, 2021. To that end, ICE was instructed to exercise prosecutorial discretion by "refrain[ing] from taking civil immigration enforcement action against known beneficiaries of victim-based immigration benefits and those known to have a pending application for such benefits." Id. Additionally, ICE was directed to coordinate with USCIS to "seek expedited adjudication of victim-based immigration applications and petitions." Id. The directive also provided: "When a noncitizen has a pending or approved application or petition for a victim-based immigration benefit, absent exceptional circumstances, ICE will exercise discretion to defer decisions on civil immigration enforcement against the applicant [] until USCIS makes a final determination on the pending victim-based immigration benefit applications … or in the case of a T Visa, [] until USCIS makes a negative bona fide or prima facie determination." Id.

21. Consistent with the victim-centered approach, during the last notice and comment period of the T Visa regulations in 2024, commenters requested DHS add language to the final rule that requires ICE to take affirmative steps to seek a [bona fide determination] from USCIS for detainees with pending applications for T nonimmigrant status. DHS declined to add such language as it was "unnecessary." Referencing ICE Directive 11005.3, DHS declined to add such language since ICE was directed to coordinate with USCIS to seek the expedited adjudication of victim-based immigration applications and petitions. See Federal Register, Vol. 89, No. 84 (April 30, 2024). DHS, however, noted that USCIS will continue to coordinate with ICE on this process. Id.

22. Subsequently, ICE published new policy guidance, Directive 11005.4, which rescinds the

Victim-Centered Approach Directive.[1] See Exhibit 3, Interim Guidance on Civil Immigration Enforcement Actions Involving Current or Potential Beneficiaries of Victim-Based Immigration Benefits. Among other changes, the Interim Guidance states: "ICE will no longer routinely request expedited adjudications from USCIS. ICE officers and agents may continue to do so subject to a case-by-case determination that it is in ICE's best interests." See id. Notably, the ICE Factsheet on the Victim-Centered Approach Memo remains on the ICE website and affirmatively states: "When alien [sic] have pending or approved applications or petitions for victim-based immigration benefits, ICE will refrain from taking enforcement actions against the applicant or petitioner until USCIS makes a: Final determination for pending T Visa applications …". See Exhibit 4, Using a Victim-Centered Approach with Alien Crime Victims, ICE (August 8, 2023) *available at* https://www.ice.gov/factsheets/using-victim-centered-approach-with-victims. It reiterates: "ICE recognizes the significant law enforcement interest in active victim-witnesses remaining in the United States and will exercise prosecutorial discretion in appropriate circumstances to facilitate access to justice and victim-based immigration benefits by alien crime victims. To that end, absent exceptional circumstances, ICE officers will refrain from taking civil immigration enforcement actions against aliens who are known beneficiaries of victim-based immigration benefits or those known to have pending applications for such benefits." Id.

## VI.    STATEMENT OF FACTS

23. Plaintiff is a 47-year-old citizen of Brazil. He has two U.S. citizen daughters, aged 18 and 20,

---

[1] It is unclear when this Interim Guidance was published as it is not dated.

whom he has raised in this country their entire lives. He has never been convicted of a crime in the United States or anywhere else.

24. In 2001, Plaintiff was ordered removed from the United States *in absentia*.

25. Plaintiff has made various and ongoing efforts to address his immigration status in this country, including filing a motion to reopen his removal proceedings, appealing the denial of the motion to reopen his removal proceedings and filing a second motion to reopen his proceedings as the law regarding Notices to Appear lacking a date and time developed.

26. In 2024, Plaintiff's immigration counsel discovered that Plaintiff had survived two separate instances of a severe form of labor trafficking, rendering him eligible to seek T nonimmigrant status pursuant to 8 U.S.C. §1101(a)(15)(T).

27. On January 21, 2025, Plaintiff (by and through counsel) filed a detailed report regarding his experiences of labor trafficking to the U.S. Department of Labor.

28. On January 22, 2025, Plaintiff (by and through counsel) filed a form I-914 Application for T Nonimmigrant Status alongside a form I-192 Application for Advance Permission to Enter as Nonimmigrant, requesting a waiver of all applicable admissibility grounds. These forms were filed at the USCIS Nebraska Service Center (Receipt Nos. LIN2515350923 and LIN2515350944). See Exhibit 1, Receipt Notices.

29. Receipt notices did not issue until March 20, 2025, despite numerous requests to obtain them by immigration counsel and congressional assistance.

30. On February 4, 2025, immigration counsel for Plaintiff emailed ICE as a routine check-in procedure. Counsel was instructed to have Plaintiff appear in person at ICE's Boston Field Office, located in Burlington, Massachusetts, on February 12, 2025 "to be enrolled into [ICE]'s CART reporting terminal." After some emails with counsel, it was agreed that Plaintiff would

check in on February 26, 2025.

31. On February 25, 2025, Plaintiff, through counsel, filed a pre-emptive Habeas Petition, contemplating the fact that ICE would likely seek to detain him the following day (Ferreira Gomes v. Moniz, 1:25-cv-10455-FDS).

32. On February 26, 2025, ICE detained Plaintiff and is actively seeking to remove him from the country. A notice of intent to remove Plaintiff before April 22, 2025 was filed in Case No. 25-1211 on April 15, 2025. See Exhibit 5, Notice of Intent to Remove.

33. Chief Judge Saylor of the District Court for the District of Massachusetts denied the Habeas Petition and an appeal of the Court's order is pending before the First Circuit Court of Appeals (Case No. 25-1211). Plaintiff also sought a mandamus petition at the District of Massachusetts, seeking an adjudication of the bona fide determination, which was denied by Chief Judge Saylor on March 7, 2025 (Ferreira Gomes v. Noem et al, 1:25-cv-10507-FDS).

34. Through the congressional liaison, Plaintiff requested that ICE review the detention of Mr. Gomes on February 26th and February 27th, to no avail though Plaintiff was informed that the Deputy Field Office Director would review his case.

35. On March 4, 2025, through congressional assistance, Plaintiff submitted an expedite request with USCIS and called the Vermont Service Center, which confirmed it had everything it needed to review the expedite request and requested 2 weeks for review of the request.

36. On March 10, 2025, the Nebraska Service Center responded through congressional assistance that it could not locate a T Visa application. Plaintiff, through congressional assistance, replied with the tracking number and proof of delivery.

37.  Plaintiff, through congressional assistance, then shared the receipt numbers issued on March 20th with ICE and again sent an inquiry to expedite the adjudication of the bona fide

determination to the Vermont Service Center on March 24, 2025 and April 9, 2025.

38. Since Mr. Ferreira Gomes' arrest and detention on February 26, 2025, counsel for Plaintiff has also made numerous requests via email to the Vermont Service Center to issue a bona fide determination. On February 27, 2025, counsel for Plaintiff emailed the Vermont Service Center VAWA Unit. This is the only contact available for urgent matters regarding T Visa applications because Nebraska Service Center only recently began receiving T Visa applications and has not yet set up a contact system. In her email, counsel requested that receipts be issued and a bona fide determination made given the exigent circumstances of Plaintiff's arrest by ICE. She has received no response. Counsel made further requests on February 28th, March 7th, and March 21st. On the March 21st request, Counsel provided USCIS with receipt numbers for Mr. Ferreira Gomes' applications.

39. Counsel made further requests to expedite the bona fide determination process on April 11th and April 15th. To date, no bona fide determination has been made, though USCIS has confirmed on April 9, 2025 that biometrics will be completed using the arrest biometrics taken by ICE in February. As is, USCIS has everything it needs to adjudicate the Petitioner's T Visa application.

40. Mr. Ferreira Gomes has been detained since February 26, 2025. While in detention, he has been threatened with both criminal and civil penalties by ICE officers in person if he fails to cooperate with his removal.

41. Given that ICE intends to remove Mr. Ferreira Gomes after April 22, 2025, Mr. Ferreira Gomes is at imminent risk of removal from the United States, absent an immediate adjudication of his T Visa application.

## VII.    COUNT I – MANDAMUS

42. Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, the allegations in Paragraphs 1-41 above.

43. The mandamus statute permits a court to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.  28 U.S.C. § 1361.

44. A mandamus plaintiff must demonstrate that: "(1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available." Benzman v. Whitman, 523 F.3d 119, 133 (2d Cir. 2008).

45. Plaintiff has a clear right to the relief sought: the adjudication of his T visa application and related waiver application.  See 8 U.S.C. § 1101(a)(15)(T); 8 C.F.R. § 214.200 et seq. Despite Plaintiff's removal order, he still clearly falls within the zone of interest contemplated by the T visa statute and its regulations. The regulations require recently filed T visa applications to undergo an "initial review" to determine if they are bona fide. 8 C.F.R. § 214.205(a); (g)(1). If USCIS determines that an application is bona fide, the final removal order will be automatically stayed, "and the stay will remain in effect until a final decision is made on the Application for T Nonimmigrant Status."  8 C.F.R. § 214.204(b)(2)(iii). There is no reason for a stay until final T visa adjudication if the Act did not seek to protect victims of trafficking who are subject to final orders of removal.

46. Plaintiff also has a clear right not to be removed while his T visa application is pending. ICE was previously instructed to refrain "from taking civil immigration enforcement action against . . . those known to have a pending application for [victim-based immigration] benefits." ICE

Directive 11005.3. This instruction was not codified only because ICE was directed to coordinate with USCIS to seek the expedited adjudication of victim-based applications. See Federal Register, Vol. 89, No. 84 (April 30, 2024). Despite a new ICE directive that appears to have rescinded Directive 11005.3, see ICE Directive 11005.4, the language of Directive 11005.3 still appears on the ICE website and indicates that ICE must still coordinate with USCIS for expedited adjudication of Plaintiff's T visa.

47. Defendants USCIS have a plainly defined and peremptory duty to adjudicate Plaintiff's T visa application and associated waiver application. While it may be within Defendants' discretion whether to grant Plaintiff's application, they have a nondiscretionary duty to timely adjudicate Plaintiff's application. See, e.g., Villa v. DHS, 607 F.Supp.2d 359, 363 (N.D. N.Y. 2009) ("While it is within the Attorney General's discretion to grant or deny an application . . . it is not within his discretion to not adjudicate at all); *Arevalo v. Ashcroft*, 344 F.3d 1, 15 (1st Cir. 2003) (holding that a noncitizen has "a right to seek relief" which is "analytically separate and distinct from a right to the relief itself"); Iddir v. INS, 301 F.3d 492, 500 (7th Cir. 2002) (right to diversity visa application adjudication); Patel v. Reno, 134 F.3d 929, 933 (9th Cir. 1997) (right to visa application adjudication); Yu v. Brown, 36 F. Supp. 2d 922, 930-31 (D.N.M. 1999) (right to Special Immigrant Juvenile application adjudication).

48. Defendants' duty is especially defined in the present context: where Plaintiff will be removed from the United States and rendered ineligible for T visa relief if Defendants do not immediately adjudicate his application. See 8 C.F.R. § 214.207(b).

49. Defendants ICE have a plainly defined and peremptory duty not to remove Plaintiff while his T visa application is pending. ICE has been instructed to coordinate with USCIS to expedite applications for victim-based benefits such as T visas. ICE Directive 11005.3; Federal

14

Register, Vol. 89, No. 84 (April 30, 2024). Once a bona fide determination is issued, removal is automatically stayed. 8 C.F.R. § 214.205(g)(1). Additionally, by operation of law, the approval of a T visa cancels any final order of removal to which the applicant may be subject. 8 C.F.R. § 214.204(o)(1).

50. No other remedy offering adequate relief is available. Plaintiff's counsel has informed USCIS of his impending removal from the United States, which the bona fide process was clearly established to prevent. Plaintiff has sought habeas relief to maintain his presence in the United States to allow USCIS additional time to issue a bona fide determination, but that request has been denied and is currently on appeal. Plaintiff has filed a writ of mandamus with the District of Massachusetts seeking to compel issuance of the bona fide determination, but the writ was denied. Plaintiff has engaged congressional assistance to submit expedite requests. Plaintiff's counsel has made numerous expedite requests via email to the Vermont Service Center. Despite these efforts, to date, Plaintiff's T visa application has not been adjudicated.

51. If USCIS does not adjudicate Plaintiff's T visa application, Plaintiff will be physically removed from the United States and rendered ineligible for the visa. 8 C.F.R. § 214.207(b). He will be separated from his wife and two U.S. citizen daughters and from the country where he has resided for over 20 years.

52. Plaintiff presents several facts addressing the TRAC factors. See Telecommunications Research & Action Center v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984). A quick adjudication of Plaintiff's pending T visa application is reasonable and feasible. The T visa regulations specifically contemplate an automatic stay of removal when a bona fide determination is issued, indicating Congress's intent to protect victims of trafficking from removal while it adjudicates the pending T visa application. In this case, USCIS has failed to do so. Human

welfare is involved; but for a pending appeal on a habeas petition, Plaintiff is currently detained

and likely to be sent thousands of miles away from his loved ones without notice. Neither

USCIS nor ICE would be prejudiced by an order requiring USCIS to adjudicate Plaintiff's T

visa application. USCIS does not have cases more urgent than a person who is at immediate

risk of removal and being rendered illegible for T visa status by operation of law. ICE

directives have required ICE to coordinate with USCIS to expedite adjudication of victim-

based applications such as T visas, and ICE may still continue to expedite adjudication of these

applications on a case-by-case basis. ICE Directives 11005.4; 11005.3. The interests

prejudiced by the delay are those of a man's freedom and right to remain in the country where

he has resided for over 20 years and where he was a victim of a severe form of labor trafficking.

## VIII.   COUNT II – AGENCY ACTION UNLAWFULLY WITHHELD AND UNREASONABLY DELAYED

53. Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, the allegations

    set forth in Paragraphs 1-41 above.

54. Defendants' failure to adjudicate Plaintiff's T visa application and associated waiver

    application constitutes an unreasonable failure to act in violation of the Administrative

    Procedures Act. See 5 U.S.C. § 702 et. seq.

55. The APA requires each agency to act within a reasonable time and creates a non-discretionary

    duty to conclude agency matters. 5 U.S.C. § 555(b); Yue Yu v. Brown, 36 F. Supp. 2d 922,

    931 (D.N.M. Jan. 28, 1999).

56. A violation of this duty is sufficient for mandamus relief.

57. The APA permits this Honorable Court to "compel agency action unlawfully withheld or

unreasonably delayed" where the Plaintiff asserts that the Defendants have failed to take a discrete action. 5 U.S.C. § 706(1). A failure to act as agency action is a failure to take a discrete, required action. <u>Norton v. Southern Utah Wilderness Alliance</u>, 542 U.S. 55, 62-63 (2004).

58. Defendants have failed to perform the discrete, non-discretionary task of adjudicating Plaintiff's T visa application and associated waiver application. Plaintiff's application has been pending beyond a reasonable time for completion.

59. The combined unreasonable delay and failure to act on Plaintiff's T visa application and waiver application can be attributed to Defendants' failure to adhere to their legal duty to avoid unreasonable delays under the INA, the APA, and the applicable rules and regulations.

60. There are no alternative adequate or reasonable forms of relief available to Plaintiff.

## IX.    COUNT III – VIOLATION OF RIGHT TO DUE PROCESS OF LAW

61. Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, the allegations in Paragraphs 1-41 above.

62. Defendants' refusal to act denies Plaintiff due process of the laws as guaranteed by the Fifth Amendment of the United States Constitution.

63. The right to fundamental fairness in administrative adjudication is protected by the Due Process Clause of the Fifth Amendment to the United States Constitution. <u>Reno v. Flores</u>, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings"). Plaintiff may seek redress in this Court for

Defendants' combined failures to provide a reasonable and just framework of adjudication in accordance with applicable law.

64. Defendants' failure to act has violated Plaintiff's due process rights.

65. Plaintiff has a liberty interest in obtaining a meaningful determination on his T visa application before his removal order is executed. See Mathews v. Elridge, 424 U.S. 319, 332 (1976); S.N.C. v. Sessions, No. 18 CIV. 7680 (LGS), 2018 WL 6175902, at *6 (S.D.N.Y. Nov. 26, 2018) (unpub.). The T visa is "a specific form of relief that Congress made available for victims of . . . human trafficking, including those with final orders of removal pending against them." Id. The automatic stay that takes effect once a bona fide determination is issued indicates Congress' intent in protecting trafficking victims from removal. 8 C.F.R. § 214.205(g)(1). Removal itself "implicates substantial liberty interests." Fatty v. Nielsen, No. C17-1535-MJP, 2018 WL 3491278, at *1 (W.D. Wash. July 20, 2018) (unpub.).

66. Plaintiff faces a risk of "erroneous deprivation" of his liberty interest. Mathews, 424 U.S. at 332. If he is removed before his T visa is adjudicated, he will be unable to pursue his application because he will no longer have the required physical presence. 8 C.F.R. § 214.11(g). On the contrary, if he is granted T nonimmigrant status, he will be permitted to remain in the United States in nonimmigrant status. 8 C.F.R. § 214.11(d)(9); see also Fatty, 2018 WL 3491278, at *2-3.

67. The government's interest is not significantly affected by adjudicating Plaintiff's T visa application. See Mathews, 424 U.S. at 332. The congressional intent of the T visa is to provide protection to immigrant survivors of trafficking to compel them to come forward and cooperate with law enforcement to combat said trafficking. See 8 U.S.C. § 7101(a). Immediately

18

adjudicating Plaintiff's T visa application furthers that goal. <u>See, e.g.</u> <u>Fatty</u>, 2018 WL 3491278, at *3.

68. Defendants' failure to act has irrevocably harmed Plaintiff by prohibiting him from moving forward with his T visa application and putting him at risk of imminent deportation from the United States – an action that will also deprive him of the ability to apply for T status altogether.

## X.    COUNT IV – DECLARATORY JUDGMENT

69. Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, the allegations in Paragraphs 1-41 above.

70. The Court has jurisdiction, *de novo*, to declare that Plaintiff is entitled to have his T visa application and waiver application immediately adjudicated.  <u>See</u> 28 U.S.C. § 2201 et seq.

71. Defendants owe to Plaintiff a duty to act on his application.

72. Defendants have failed to exercise this duty.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays that this court:

(A) Compel Defendants and those acting under them to perform their duty to immediately adjudicate Plaintiff's I-914 Application for T Nonimmigrant Status and his I-192 Application for Advance Permission to Enter as a Nonimmigrant;

(B) Grant reasonable attorney's fees and costs of court under the Equal Access to Justice Act;

and

(C) Grant any further relief this Court deems just and proper.


Respectfully Submitted

Fabricio Fereira Gomes, Plaintiff

By and through:

*s/ Annelise M. Jatoba de Araujo*

_____
Annelise M. Jatoba de Araujo
Araujo & Fisher, LLC
75 Federal St, Ste 910
Boston, MA 02110
T: 617-716-6400
C: 419-494-3051
F: 617-716-6403
*Counsel for Plaintiff*



Dated: April 17, 2025