# Exhibit 2

FOR OFFICIAL USE ONLY

## U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

**ICE Directive 11005.3:**     **Using a Victim-Centered Approach with Noncitizen Crime Victims**

**Issue Date:** *August 10, 2021*
**Superseded:** 11005.2: *Stay of Removal Requests and Removal Proceedings Involving U Nonimmigrant Status (U Visa) Petitioners* (Aug. 2, 2019)

1. **Purpose/Background.** This Directive sets forth U.S. Immigration and Customs Enforcement (ICE) policy regarding civil immigration enforcement actions involving noncitizen[1] crime victims, including applicants for and beneficiaries of victim-based immigration benefits and Continued Presence.

   The duty to protect and assist noncitizen crime victims is enshrined in, among other laws, the Violence Against Women Act (VAWA),[2] the Trafficking Victims Protection Act (TVPA),[3] and their respective reauthorizations. Congress created victim-based immigration benefits to encourage noncitizen victims to seek assistance and report crimes committed against them despite their undocumented status. When victims have access to humanitarian protection, regardless of their immigration status, and can feel safe in coming forward, it strengthens the ability of local, state, and federal law enforcement agencies, including ICE, to detect, investigate, and prosecute crimes.

   Coupled with available humanitarian protections, applying a victim-centered approach minimizes any chilling effect that civil immigration enforcement actions may have on the willingness and ability of noncitizen crime victims to contact law enforcement, participate in investigations and prosecutions, pursue justice, and seek benefits. A victim-centered approach encourages victim cooperation with law enforcement, engenders trust in ICE agents and officers, and bolsters faith in the entire criminal justice and civil immigration systems.

2. **Policy.** ICE will exercise prosecutorial discretion in appropriate circumstances to facilitate access to justice and victim-based immigration benefits by noncitizen crime victims.[4]

---

[1] For purposes of this Directive, "noncitizen" means any person as defined in section 101(a)(3) of the Immigration and Nationality Act (INA).

[2] Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 17 (1994).

[3] Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1464 (2000).

[4] *See* ICE Directive No. 10076.1, *Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs* (June 17, 2011).

---

FOR OFFICIAL USE ONLY

To that end, absent exceptional circumstances, ICE will refrain from taking civil immigration enforcement action against known beneficiaries of victim-based immigration benefits and those known to have a pending application for such benefits. In addition, when necessary and appropriate, ICE will coordinate with U.S. Citizenship and Immigration Services (USCIS) to seek expedited adjudication of victim-based immigration applications and petitions.

Additionally, ICE officers and agents may encounter noncitizen victims of crime who are not the beneficiary of victim-based immigration benefits and do not have pending applications for such benefits. Accordingly, in the course of their duties, ICE officers and agents must look for indicia or evidence that suggests a noncitizen is a victim of crime, such as being the beneficiary of an order of protection or being the recipient of an eligibility letter from the U.S. Department of Health and Human Services Office of Trafficking in Persons. The fact that someone is a victim of crime and, where applicable, may be eligible for victim-based immigration benefits for which they have not yet applied, is a discretionary factor that must be considered in deciding whether to take civil immigration enforcement action against the noncitizen or to exercise discretion, including but not limited to release from detention.

2.1. **Applicants for and beneficiaries of victim-based immigration benefits**. When a noncitizen has a pending or approved application or petition for a victim-based immigration benefit, absent exceptional circumstances, ICE will exercise discretion to defer decisions on civil immigration enforcement action against the applicant or petitioner (primary and derivative) until USCIS makes a final determination on the pending victim-based immigration benefit application(s) or petition(s), including adjustment of status for noncitizens with approved Special Immigrant Juvenile status, or, in the case of a T visa, U visa, or VAWA application, until USCIS makes a negative bona fide or prima facie determination.

2.2. **Assisting law enforcement partners.** Absent exceptional circumstances, during the pendency of any known criminal investigation or prosecution, ICE will not take civil immigration enforcement action against victims and witnesses without approval from Headquarters Responsible Officials and may, where applicable and appropriate, issue deferred action or a stay of removal to victims and witnesses. Where available information indicates a noncitizen may be a noncitizen crime victim or witness, ICE should identify victim status as soon as practicable when victim status is unknown or unclear.

3. **Definitions.** The following definitions apply for purposes of this Directive only.

3.1. **Bona Fide Determination.** A USCIS determination that a T and/or U visa petition has been initially reviewed and:

a)    Is complete and properly filed;

b)    Includes completed biometric and biographical background checks; and

FOR OFFICIAL USE ONLY

    c)    Presents a prima facie case for approval of the benefit as the phrase is used in INA § 237(d)(1).

A U visa petitioner may receive deferred action from USCIS and employment authorization if USCIS finds the petition bona fide and the petitioner does not pose a risk to public safety or national security and merits a favorable exercise of discretion.

**3.2.**   **Civil Immigration Enforcement Action.** A civil immigration enforcement or removal determination, decision, or action that includes, but is not limited to, a decision whether or not to:

    a)    Issue a detainer or assume custody of a noncitizen subject to a previous detainer;

    b)    Issue, reissue, serve, file, or cancel a Notice to Appear;

    c)    Focus resources on administrative violations or conduct;

    d)    Stop, question, or arrest a noncitizen for an administrative violation of the civil immigration laws;

    e)    Detain or release from custody subject to conditions;

    f)    Grant deferred action or parole; and

    g)    Execute a final order of removal (and under what circumstances).

**3.3.**   **Continued Presence.** Continued Presence is an ICE-approved immigration designation requested by law enforcement nationwide for human trafficking victims. Continued Presence allows trafficking victims to lawfully remain in the United States temporarily and work during the investigation into the human trafficking-related crimes committed against them and during any civil action under 18 U.S.C. § 1595 filed by the victims against their traffickers.

**3.4.**   **Exceptional Circumstances** generally exist only in the following circumstances:

    a)    The noncitizen poses national security concerns; or

    b)    The noncitizen poses an articulable risk of death, violence, or physical harm to any person.

**3.5.**   **Field Responsible Official (FRO).** The highest-ranking official in any ICE field location. This includes Special Agents in Charge (SACs), Field Office Directors (FODs), ICE Attachés, and any other officials who have been designated, in writing, by the Director.

**3.6.**   **Headquarters Responsible Officials (HRO).** The Executive Associate Directors (EADs) of Enforcement and Removal Operations (ERO), Homeland Security Investigations (HSI),

FOR OFFICIAL USE ONLY

and Management and Administration (M&A); the Associate Director of the Office of Professional Responsibility (OPR); and the Assistant Directors, Officers, or equivalent positions who report directly to the Director, Deputy Director, or Chief of Staff.

**3.7. Prima Facie Determination.** A USCIS determination that a VAWA self-petition has been initially reviewed and:

   a)   Is complete and properly filed; and

   b)   Found to have addressed each of the eligibility requirements.

**3.8. Victim-based Immigration Benefits**. Immigration benefits adjudicated by USCIS for noncitizen crime victims and their qualifying family members, including T nonimmigrant status (T visa) for qualifying human trafficking victims, U nonimmigrant status (U Visa) for qualifying victims of crime, VAWA relief[5] for qualifying domestic violence victims, Special Immigrant Juvenile classification (SIJ) for qualifying children who have been abused, neglected, or abandoned by one or both parents.

**3.9. Victim-centered Approach**. An approach broadly adopted by federal law enforcement agencies whereby equal value is placed on the identification and stabilization of victims and on the deterrence, investigation, and prosecution of perpetrators. It should be applied to policymaking and civil immigration enforcement actions to the greatest extent possible, to the extent consistent with law. The goal of a victim-centered investigation and prosecution is to focus the investigation and prosecution around the victim while minimizing any undue stress, harm, and trauma to the victim.

**3.10. Waiting List Determination.** A USCIS decision on a U visa petition that is the functional equivalent of a full adjudication on the merits of the petition, including complete biometric and biographical background checks and adjudication of any accompanying waivers of inadmissibility. Once approved, a petitioner is placed on the waiting list when, due solely to the statutory cap, a U-1 nonimmigrant visa is not currently available. When a U visa petitioner is placed on the waiting list, by regulation, USCIS grants deferred action or parole to the noncitizen and any qualifying family members and may afford them employment authorization.[6]

**4.    Responsibilities**.

**4.1. HROs** are responsible for:

   a)    Ensuring compliance with the provisions of this Directive;

---

[5] VAWA relief includes the VAWA Self-Petition, waiver of the joint filing requirement for Petition to Remove Conditions on Residence; VAWA Cuban Adjustment Act; VAWA Haitian Refugee Immigration Fairness Act; VAWA Nicaraguan Adjustment and Central American Relief Act; VAWA Suspension of Deportation; and VAWA Cancellation of Removal.

[6] 8 C.F.R. § 214.14(d).

FOR OFFICIAL USE ONLY

b) Reporting to the ICE Office of the Director (through the Office of the Deputy Director), on a regular basis, the civil immigration enforcement actions of their FROs involving applicants for and beneficiaries of victim-based immigration benefits;

c) Preparing and/or providing for training relevant to carrying out the provisions of this Directive;

d) Assigning a headquarters-level point of contact (POC) for field personnel regarding victim-based immigration benefits, coordinating with USCIS, noncitizens, and noncitizens' attorneys or representatives in cases in which noncitizens have applied for such benefits; and

e) Developing directorate- or program-level policies and procedures as needed to ensure compliance with this Directive, and consulting with and obtaining approval from the Office of the Director, through the ICE Office of Policy and Planning, prior to issuing any such guidance.

**4.2. FROs** are responsible for:

a) Ensuring that personnel in their areas of responsibility (AORs) comply with this policy and related policies, guidance, and standard operating procedures;

b) Ensuring personnel in their AORs complete all required training, including any annual refresher training;

c) Assigning a POC within their AOR regarding victim-based immigration benefits, coordinating with USCIS, noncitizens, and noncitizens' attorneys or representatives in cases in which noncitizens have applied for such benefits;

d) Coordinating, through their field-level POCs, with the headquarters-level POCs assigned by the HROs;

e) Reporting monthly on civil immigration enforcement actions involving applicants for and beneficiaries of victim-based immigration benefits in their AORs to their HROs; and

f) Ensuring appropriate mechanisms exist for coordination with other ICE Directorates and Program Offices.

**4.3. OPR SACs** are responsible for signing vetted U visa certifications for noncitizen victims of crime related to OPR investigations.

**4.4. HSI SACs** are responsible for:

FOR OFFICIAL USE ONLY

a)   Signing Continued Presence requests, vetted T visa declarations for noncitizen trafficking victims, and U visa certifications for noncitizen victims of qualifying criminal activity related to HSI investigations;

b)   Adjudicating requests for deferred action from noncitizen victims and witnesses of crime, including applicants for and beneficiaries of victim-based immigration benefits;

c)   Seeking guidance from the Office of the Principal Legal Advisor (OPLA) if planning to deny a deferred action request from a noncitizen victim of crime when ICE is aware they are a victim, and their intent to pursue an immigration benefit, or pending or approved application for a victim-based benefit;

d)   Forwarding requests for Continued Presence to the Center for Countering Human Trafficking; and

e)   Developing local procedures to carry out this directive which must include procedures to respond, in appropriate cases, to noncitizens detained in ICE custody.

**4.5.  ERO FODs** are responsible for:

a)   Adjudicating stay of removal or deferred action requests for noncitizen victims and witnesses of crime, including applicants for and beneficiaries of victim-based immigration benefits, as well as victims and witnesses of crimes that occurred in ICE custody and for which the investigation is ongoing;

b)   Seeking guidance from OPLA if planning to issue a denial to a stay of removal request from a noncitizen victim of crime when ICE is aware they are a victim, and their intent to pursue an immigration benefit, or pending or approved application for a victim-based benefit; and

c)   Developing local procedures to carry out this directive which must include methods to identify victims of crime as encountered and in detention and referring them to appropriate law enforcement authorities as needed.

**4.6.  ICE Agents and Officers** are responsible for:

a)   Identifying victims of crime as encountered and in custody through proactively inquiring with noncitizens, where available information indicates a noncitizen may be a noncitizen crime victim or witness, about any prior victimization, any pending petitions or applications, and, where appropriate, accessing USCIS systems for evidence of any pending or approved victim-based applications or petitions, notifying supervisors of their status, properly recording this information, and referring victims to appropriate law enforcement authorities, as appropriate;

---

FOR OFFICIAL USE ONLY

b)  Implementing a victim-centered approach to civil immigration enforcement actions, including taking proactive steps to assist victims;

c)  Coordinating with AOR POCs for noncitizens pursuing victim-based immigration benefits;

d)  Using all appropriate prosecutorial discretion related to victims generally and, absent exceptional circumstances, refraining from taking civil immigration enforcement action against applicants for and beneficiaries of victim-based immigration benefits; and

e)  Supporting victims in criminal investigations through deferred action, Continued Presence, T visa declarations, or U visa certifications, as appropriate.

**5.  Procedures/Requirements.**

**5.1.  Identifying Applicants for and Beneficiaries of Victim-Based Immigration Benefits.** Except where exigent circumstances exist that make it impracticable to do so, before ICE takes civil immigration enforcement action against a noncitizen, ICE officers and agents must consult available records and databases, including the Central Index System database (or any successor information technology system), to determine whether the noncitizen is a beneficiary of victim-based immigration benefits, or has a pending application or petition for such benefit.[7] When exigent circumstances exist that made consultation impracticable prior to taking a civil immigration enforcement action, ICE officers and agents must consult available records and databases as soon as practicable following the civil immigration enforcement action. A noncitizen may become a victim of crime at any point in the immigration enforcement lifecycle. Accordingly, whenever reviewing cases in the course of their duties, ICE officers and agents must routinely check for information suggesting that a noncitizen has become a victim of crime that could allow the noncitizen to apply for an immigration benefit; in such cases, ICE officers and agents must take actions appropriate and consistent with this Directive.

**5.2  Returning A-Files to USCIS.** Where an application or petition for a victim-based immigration benefit is pending, ICE should create a temporary A-File and return the original A-File to USCIS as soon as practicable so that USCIS can adjudicate the benefit request.

**5.3  Adhering to 8 U.S.C. § 1367 Protections.** ICE officers and agents are prohibited from disclosing any information, with limited exceptions, regarding applicants for and beneficiaries of Continued Presence, T visas, U visas, and VAWA relief. Additionally, ICE personnel cannot rely solely upon information provided by a prohibited source to take a civil immigration enforcement action against an applicant or beneficiary, without first

---

[7] DHS Directive No. 002-02, *Implementation of Section 1367 Information Provisions* (Nov. 1, 2013), DHS Instruction No. 002-02-001, *Implementation of Section 1367* (Nov. 7, 2013).

FOR OFFICIAL USE ONLY

corroborating the information from an independent source. In all cases, officers and agents should consult and confirm current policy prior to disclosing any information.

**5.4**  **Deferring to USCIS Adjudications.** ICE will review noncitizen crime victims' USCIS notices and/or the CLAIMS database (or any successor information technology system) to determine whether USCIS has made a bona fide determination or waitlist determination, or approved or denied a victim-based immigration benefit. Recognizing that systems information may not be updated in real-time, where there is evidence that a noncitizen may be pursuing a victim-based immigration benefit that is not currently reflected in information technology systems available to ICE, officers or agents should work with their AOR POC to confirm whether any applications for such benefits exist. ICE generally will endeavor to act according to the status of the application as follows:

a)  Pending applications. When encountering a noncitizen with a pending application or petition for a victim-based immigration benefit and the noncitizen is detained in ICE custody and their release is prohibited by law or exceptional circumstances exist, AOR POCs will request that USCIS expedite the decision and will notify USCIS if the noncitizen is subsequently released.

Except where exceptional circumstances exist, or if USCIS has administratively closed a case for failure of the applicant to prosecute the application, a noncitizen with a pending victim-based application or petition who is subject to an administratively final removal order should generally be issued a stay of removal. In cases in which the noncitizen is in pending removal proceedings before the immigration court, ICE officers and agents should inform OPLA so that it may consider whether agreeing to a continuance of removal proceedings would be appropriate. These decisions should be reviewed where the noncitizen subsequently receives a criminal conviction that merits prioritization under current DHS or ICE civil immigration enforcement priorities or engages in acts that otherwise create exceptional circumstances.

Where USCIS has granted deferred action to a noncitizen crime victim with pending removal proceedings or made a positive bona fide determination on their application, ICE officers and agents should notify OPLA so that it may consider whether seeking dismissal of proceedings would be appropriate. Where the noncitizen is subject to a final order, ERO should review the case for a discretionary stay of removal.

b)  Waitlisted U visas and approved benefits. If USCIS waitlists a U visa petitioner or approves any victim-based immigration benefit, including approved VAWA and SIJ petitions and pending adjustment of status applications with USCIS, ICE should review the case for the exercise of prosecutorial discretion, however appropriate.

c)  Denied benefits. If USCIS denies the benefit, ERO may continue to process the noncitizen for removal, consistent with current enforcement priorities.

FOR OFFICIAL USE ONLY

d)  Exceptions. ICE may request that USCIS conduct expedited adjudications for noncitizens who are detained in ICE custody and their release is prohibited by law or exceptional circumstances exist, to ensure that civil immigration enforcement action may continue as expeditiously as possible for those noncitizens determined to be a priority under civil immigration enforcement guidance.

**5.5    Respecting ICE Continued Presence Authorization**. As further defined in Section 3.3 above, Continued Presence is an ICE approved immigration designation requested by law enforcement nationwide for human trafficking victims. Absent exceptional circumstances, ICE agents and officers will not take civil immigration enforcement action against human trafficking victims with Continued Presence.

**5.6    Detention.** The fact that an individual is a victim of crime is a discretionary factor when weighing civil immigration enforcement decisions. Accordingly, ICE officers must consider any and all evidence that an individual has been a victim of crime—such as the receipt of victim-based immigration benefits or pending applications for such benefits, as well any other indicia or evidence that suggests the individual is a victim of crime (such as being the beneficiary of an order of protection or being the recipient of an eligibility letter from the Office of Trafficking in Persons)—in rendering custody determinations.

If USCIS approves a victim-based immigration benefit for a noncitizen detained in ICE custody, the noncitizen should be considered for release from detention so long as their release is not prohibited by law and no exceptional circumstances exist.

**5.7    Implementing a Victim-Centered Approach to Civil Immigration Enforcement.** ICE will adopt measures to proactively identify and assist victims, such as alerting OPLA attorneys to the victim status of a noncitizen in removal proceedings so that appropriate prosecutorial discretion may be considered, providing information about victim-based immigration benefits, and referring identified victims to appropriate law enforcement authorities. HQ and AOR POCs responsible for victim-based immigration benefits shall be responsible for ensuring that such measures are identified, developed, and introduced, as well as working to ensure that case-specific actions are carried out.

**5.8    Approvals for Civil Immigration Enforcement Actions.** ICE should pursue civil immigration enforcement action against beneficiaries of victim-based immigration benefits only in exceptional circumstances (as defined in Section 3.4), or where it does not appear that the criminal activity directly stems from their victimization, and with approval from the applicable HRO.

a)  In deciding whether to take civil immigration enforcement action against a noncitizen applicant for or beneficiary of victim-based immigration benefits, the agent or officer must consider, in consultation with the HRO through the chain of command, whether the civil immigration enforcement action is otherwise an appropriate use of ICE's limited resources and fits within applicable ICE and DHS enforcement priorities and the victim-centered approach to enforcement.

FOR OFFICIAL USE ONLY

b) In requesting approval, the agent or officer must submit a written justification through the chain of command to the HRO explaining why the action is appropriate in the context of this Directive.

The approval to carry out a civil immigration enforcement action against a particular noncitizen victim applies to that noncitizen alone and will not authorize civil immigration enforcement action against other noncitizens encountered during an operation.

c) If exigent circumstances make it impracticable to obtain preapproval for a civil immigration enforcement action, the agent or officer may conduct the civil immigration enforcement action and then must request approval from the HRO within 48 hours following the action with an explanation of the exigent circumstances, through the chain of command, as described above.

**5.9  Identifying Noncitizen Crime Victims.**

a) If ERO identifies a noncitizen crime victim who has not reported the crime to law enforcement and desires to do so, ERO will provide appropriate contact information for local, state or federal law enforcement authorities. When detained, ERO will ensure that the noncitizen has access to a private area in which to speak to law enforcement in person or telephonically about the crime.

1) ERO will document victim identification and any actions taken in the A-File and EARM, and note whether the noncitizen applied for, or intends to apply for, victim-based immigration benefits;

2) ERO officers will report the contact to a supervisor, per the processes established by the FRO in their AOR, and any Field Office designated POC for human trafficking, as applicable; and

3) ERO will provide the victim with information regarding legal services and victim-based immigration benefits.

**5.10  Tracking and Reporting Civil Immigration Enforcement Actions Against Applicants for and Beneficiaries of Victim-Based Immigration Benefits to the Office of the Director.**

a) All decisions to pursue civil immigration enforcement action against applicants for and beneficiaries of victim-based immigration benefits will be recorded in the appropriate case management systems.

b) Until systems are updated to provide automated reporting, the FROs will provide to HROs a monthly report of the number of civil immigration enforcement actions taken against applicants for and beneficiaries of U, T, VAWA, and SIJ benefits and accompanying narrative justification for the enforcement action taken.

FOR OFFICIAL USE ONLY

c) The HROs will provide the monthly reports to the Office of the Director (through the Office of the Deputy Director).

**5.11 Human trafficking victims.** The fact that a human trafficking victim engages in criminal acts as a direct result of the human trafficking does not impact the fact that the noncitizen is a crime victim. ICE personnel will consider human trafficking victim status when making civil immigration enforcement actions regarding a victim who engaged in unlawful activity as a direct result of force, fraud, or coercion associated with being trafficked. Unlawful activity includes, but is not limited to, engaging in prostitution, entering the country without documentation, or working without documentation or false documents.[8] ICE personnel must consider the noncitizen's victim status in relation to their criminal actions when making decisions whether to take civil immigration enforcement action.[9]

**5.12 Domestic violence charges.** Some convictions for domestic violence may be result of self-defense by a victim of domestic violence against an abuser, and the context of any arrests should be carefully evaluated if such charges or convictions are a part of determining the existence of exceptional circumstances. Given the complexity of these situations, officers and agents are encouraged to consult with the charging law enforcement agency as well as the HQ POC before taking civil immigration enforcement action.

**6.    Training.** ICE officers and agents must complete required training related to this Directive, including annual refresher training. Such training must include an overview of the victim-centered approach, including a description of victim-based immigration benefits, and an overview of what discretion might be appropriate in various circumstances.

**7.    Recordkeeping.** All relevant documents produced or provided in accordance with this Directive must be maintained in EARM and PLAnet in accordance with an applicable National Archives and Records Administration (NARA) General Records Schedule (GRS) or a NARA-approved agency-specific records control schedule. If the records are not subject to a records schedule, they must be maintained indefinitely by the agency. In the event the records are subject to a litigation hold, they may not be disposed of under a records schedule until further notification.

**8.    Authorities/References.**

**8.1.** *Victims of Trafficking and Violence Protection Act of 2000*, Pub. L. No. 106-386, 114 Stat. 1464.

**8.2.** *Violence Against Women and Department of Justice Reauthorization Act of 2005*, Pub. L. No. 109-162, Tit. VIII, 119 Stat. 3053-3077.

---

[8] White House, *National Action Plan to Combat Human Trafficking* (2020).

[9] 6 U.S.C. § 645(b)(2)(B).

---

**Using a Victim-Centered Approach with Noncitizen Crime Victims**                                    11

FOR OFFICIAL USE ONLY

**8.3.** *William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008*, Pub. L. No. 110-457, 122 Stat. 5044.

**8.4.** *Immigration and Nationality Act of 1952*, as amended, Pub. L. No. 82-414, 66 Stat. 163.

**8.5.** 8 U.S.C. § 1367, Penalties for disclosure of information.

**8.6.** 8 C.F.R. § 204.11, Special immigrant juvenile classification.

**8.7.** 8. C.F.R. § 204.2, Petitions for relatives, widows and widowers, and abused spouses and children.

**8.8.** 8 C.F.R. § 214.11, Alien victims of severe forms of trafficking in persons.

**8.9.** 8 C.F.R. § 214.14, Alien victims of certain qualifying criminal activity.

**8.10.** DHS Directive 002-02, *Implementation of Section 1367 Information Provisions* (Nov. 1, 2013).

**8.11.** DHS Instruction Number 002-02-001, *Implementation of Section 1367* (Nov. 7, 2013).

**8.12.** ICE Directive 11090.1, *Interim Guidance: Civil Immigration Enforcement and Removal Priorities* (Feb. 18, 2021).

**8.13.** ICE Directive 10076.1, *Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs* (June 17, 2011).

**8.14. Attachments.** None.

**9.    No Private Right.** This document provides only internal ICE policy guidance, which may be modified, rescinded, or superseded at any time without notice. It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter. Likewise, no limitations are placed by this guidance on the otherwise lawful enforcement or litigative prerogatives of ICE.

**Tae D. Johnson**
**Acting Director**
**U.S. Immigration and Customs Enforcement**