UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT
(BURLINGTON DIVISION)

| | |
|---|---|
| **FABRICIO FERREIRA GOMES**,<br><br>    Plaintiff,<br><br>v.<br><br>**PAMELA BONDI**,<br>U.S. Attorney General;<br><br>**KIKA SCOTT**,<br>Senior Official Performing the Duties of the Director, U.S. Citizenship and Immigration Services;<br><br>**KRISTI NOEM**,<br>Secretary, U.S. Department of Homeland Security;<br><br>**LAURA B. ZUCHOWSKI**,<br>Director, U.S. Citizenship and Immigration Services, Vermont Service Center;<br><br>**LOREN K. MILLER**,<br>Director, U.S. Citizenship and Immigration Services, Nebraska Service Center;<br><br>**TODD M. LYONS**,<br>Acting Director, U.S. Immigration and Customs Enforcement;<br><br>**PATRICIA HYDE**,<br>Acting Director of Boston Field Office,<br>U.S. Immigration and Customs Enforcement,,<br><br>    Defendants. | Case No. _____<br><br><br><br>**EMERGENCY MOTION FOR STAY OF REMOVAL** |

1

# TABLE OF CONTENTS

UNITED STATES DISTRICT COURT ................................................................................................. 1

I.     INTRODUCTION ............................................................................................................... 3

II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY ....................................... 3

III.   REASONS FOR GRANTING A STAY ............................................................................ 6

    A.   Petitioner is Likely to Succeed on the Merits ............................................................... 7

    B.   Absent a Stay of Removal, Petitioner Faces Irreparable Harm ............................... 11

       i.    Forced deportation will pretermit Petitioner's pending I-914 Application for T Nonimmigrant Status, which requires applicants to be physically present in the United States on account of trafficking. ................................................................................................. 11

       ii.   Forced deportation would adversely affect Petitioner by separating him from his family 13

    C.   The Issuance of a Stay Will Not Substantially Injure the Government, and the Public Interest Lies in Granting Petitioner's Request for a Stay of Removal ............................ 14

       i.    Neither the Government Nor the Public will be Injured. ..................................................... 14

IV.   CONCLUSION ................................................................................................................. 15

I.  INTRODUCTION

Petitioner, Fabricio Ferreira Gomes ("Mr. Ferreira Gomes"), pursuant to Federal Rules of Federal Rules of Civil Procedure Rule 62, moves this Court for an emergency stay of removal during the pendency of this Action. Petitioner faces imminent removal, as his departure has been scheduled to occur no earlier than April 22, 2025. Absent a stay of removal, Mr. Ferreira Gomes would face irreparable harm, as he faces imminent removal from the United States, despite having been the victim of a severe form of trafficking in persons in the United States and seeking a T Nonimmigrant Visa on the basis thereof. This Motion is sought on an emergency basis given Immigration and Customs Enforcement's keen interest in removing all noncitizens with final orders of removal without exception. For the reasons stated herein, Mr. Ferreira Gomes merits a stay of removal from this Court.

II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY

Petitioner is a 47-year-old citizen of Brazil. He has two U.S. citizen daughters, aged 17 and 20, whom he has raised in this country. He has never been convicted of a crime in the United States or anywhere else.

In 2001, at the age of 23, Petitioner entered the United States without inspection and was encountered by the then-Immigration and Nationality Service and placed into removal proceedings via a Notice to Appear that did not contain a time or date of any future hearing. He was released from custody on a bond. He did not receive the notice of hearing for his removal proceedings. His EOIR file reflects that the notice of hearing was returned to the court as undeliverable.

In 2013, Petitioner was detained by Immigration and Customs Enforcement but released and placed on an Order of Supervision. He has complied with that Order of Supervision at all times for the past 12 years.

3

Petitioner has made various and ongoing efforts to address his immigration status in this country, including filing a motion to reopen his removal proceedings, appealing the denial of the motion to reopen his removal proceedings, and filing a second motion to reopen his proceedings as the law regarding Notices to Appear lacking a date and time developed.

In 2024, Petitioner's immigration counsel identified that Petitioner had survived two instances of a severe form of labor trafficking, rendering him eligible to seek T nonimmigrant status pursuant to 8 U.S.C. §1101(a)(15)(T).

On January 21, 2025, Petitioner (by and through counsel) filed a detailed report regarding his experiences of labor trafficking to the U.S. Department of Labor. On January 22, 2025, Petitioner (by and through counsel) filed a Form I-914 Application for T Nonimmigrant Status alongside a Form I-192 Application for Advance Permission to Enter as Nonimmigrant, requesting a waiver of all applicable admissibility grounds. These forms were filed at the USCIS Nebraska Service Center (Receipt Nos. LIN2515350923 and LIN2515350944). Receipt notices did not issue until March 20, 2025, despite numerous requests to obtain them by immigration counsel and through congressional assistance.

On February 4, 2025, immigration counsel for Plaintiff emailed ICE as a routine check-in procedure. Counsel was instructed to have Plaintiff appear in person at ICE's Boston Field Office, located in Burlington, Massachusetts, on February 12, 2025 "to be enrolled into [ICE]'s CART reporting terminal." After some emails with counsel, it was agreed that Plaintiff would check in on February 26, 2025. On February 25, 2025, Plaintiff, through counsel, filed a pre-emptive Habeas Petition, contemplating the fact that ICE would likely seek to detain him the following day (Ferreira Gomes v. Moniz, 1:25-cv-10455-FDS). On February 26, 2025, ICE detained Plaintiff and is actively seeking to remove him from the country. A Notice of Intent to Remove Plaintiff no

earlier than April 22, 2025 was filed in Case No. 25-1211 on April 15, 2025. Chief Judge Saylor of the District Court for the District of Massachusetts denied the Habeas Petition and an appeal of the Court's order is pending before the First Circuit Court of Appeals (Case No. 25-1211). Plaintiff also sought a mandamus petition at the District of Massachusetts, seeking an adjudication of the T visa bona fide determination, which Chief Judge Saylor denied on March 7, 2025 (Ferreira Gomes v. Noem et al, 1:25-cv-10507-FDS).

Through the congressional liaison, Plaintiff requested that ICE review the detention of Mr. Ferreira Gomes on February 26, 2025 and February 27, 2025 to no avail. On March 4, 2025, Plaintiff, through congressional assistance submitted an expedite request with USCIS and called the Vermont Service Center, which confirmed it had everything it needed to review the T Visa expedite request and requested two weeks for review of the request. On March 7, 2025, Plaintiff, through congressional assistance, contacted both the Vermont Service Center and ICE but could not reach anyone. On March 10, 2025, the Nebraska Service Center responded, stating that it could not locate a T Visa application. Plaintiff, through congressional assistance, replied with the tracking number and proof of delivery. Plaintiff, through congressional assistance, then shared the receipt numbers issued on March 20th with ICE and again sent an inquiry to expedite the adjudication of the bona fide determination to the Vermont Service Center on March 24, 2025 and April 9, 2025.

Since Mr. Ferreira Gomes' arrest and detention on February 26, 2025, counsel for Plaintiff has also made numerous requests via email to the Vermont Service Center to issue a bona fide determination. On February 27, 2025, counsel for Plaintiff emailed the Vermont Service Center VAWA Unit. This is the only contact available for urgent matters regarding T Visa applications because the Nebraska Service Center only recently began receiving such applications and has not

yet set up a contact system. In her email, counsel requested that receipts be issued and a bona fide determination made given the exigent circumstances of Plaintiff's arrest by ICE. She has received no response. Counsel made further requests on February 28th, March 7th, and March 21st. In the March 21, 2025 request, Counsel provided USCIS with receipt numbers for Mr. Ferreira Gomes' applications. Counsel made further requests to expedite the bona fide determination process on April 11, 2025 and April 15, 2025. To date, no bona fide determination has been made, though on April 9, 2025, USCIS that biometrics will be completed using the arrest biometrics taken by ICE in February. As is, USCIS has everything it needs to adjudicate the bona fide determination.

Given that ICE intends to remove Mr. Ferreira Gomes no earlier than April 22, 2025, Mr. Ferreira Gomes is at imminent risk of removal from the United States, absent an adjudication of his T Visa application. Petitioner filed a Complaint for Declaratory, Injunctive, and Mandamus Relief requesting that USCIS immediately adjudicate the merits of Mr. Ferreira Gomes' T Visa application, given that he is scheduled to be removed no earlier than April 22, 2025. For these reasons, Petitioner now seeks a stay of removal.

### III.    REASONS FOR GRANTING A STAY

Adjudication of a motion for stay of removal requires that the Court consider four factors: (1) whether the stay applicant demonstrates a strong likelihood of success on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) where the public interest lies. Nken v. Holder, 556 U.S. 418, 434 (2009). In Mr. Ferreira Gomes' case, all four factors are met. "The first two factors are the most critical, but a stay is not a matter of right, even if irreparable injury might otherwise result[;] it is an exercise of judicial discretion and the party requesting a stay bears the burden of showing that the circumstances justify an exercise of that

discretion." Uniformed Fire Officers Ass'n v. de Blasio, 973 F.3d 41, 48 (2d Cir. 2020) (internal quotations omitted).

### A. Petitioner is Likely to Succeed on the Merits

A stay petitioner must first make "a strong showing that he is likely to succeed on the merits." See Nken, 129 S.Ct. at 1760-61 (quoting Hilton, 481 U.S. at 776, 107 S. Ct. 2113) (quotation marks omitted). There is some uncertainty as to the exact degree of likely success that stay petitioners must show, due principally to the fact that courts routinely use different formulations to describe this element of the stay test. See Mohammed v. Reno, 309 F.3d 95, 100-02 (2d Cir. 2002) (collecting cases). A stay may be issued upon "demonstrat[ion] [of] a substantial case on the merits," so long as the other factors support the stay. Hilton, 481 U.S. at 778, 107 S.Ct. 2113. Regarding the likelihood of success factor, Nken held only that "[i]t is not enough that the chance of success on the merits be 'better than negligible,' and that '[m]ore than a mere possibility of relief is required." 129 S.Ct. at 1761 (citations omitted). Plaintiff is likely to succeed on the merits of: (1) his mandamus claim; (2) his claim under the Administrative Procedure Act; and (3) his Fifth Amendment due process claim.

### i. Petitioner is Likely to Succeed on the Merits of his Mandamus Claim

The mandamus statute permits a court to compel an agency of the United States to perform a duty owed to the plaintiff. 28 U.S.C. § 1361. To succeed on a mandamus claim, a petitioner must demonstrate that: "(1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available." Benzman v. Whitman, 523 F.3d 119, 133 (2d Cir. 2008).

Mr. Ferreira Gomes has a clear right to the relief sought and Respondents owe him a plainly defined and peremptory duty to adjudicate his application. The Immigration and Nationality Act

and its implementing regulations provide a right to apply for T status. 8 U.S.C. § 1101(a)(15)(T); 8 C.F.R. § 214.200 et seq. Mr. Ferreira Gomes has submitted his T visa application pursuant to those requirements and is within the zone of interest contemplated by the T visa statute and its regulations. While Respondents may have discretion whether to grant Mr. Ferreira Gomes' application, they have a nondiscretionary duty to adjudicate the application. *See, e.g.*, Villa v. DHS, 607 F.Supp.2d 359, 363 (N.D. N.Y. 2009) ("While it is within the Attorney General's discretion to grant or deny an application . . . it is not within his discretion to not adjudicate at all); *Arevalo v. Ashcroft*, 344 F.3d 1, 15 (1st Cir. 2003) (holding that a noncitizen has "a right to seek relief" which is "analytically separate and distinct from a right to the relief itself"); Iddir v. INS, 301 F.3d 492, 500 (7th Cir. 2002) (right to diversity visa application adjudication); Patel v. Reno, 134 F.3d 929, 933 (9th Cir. 1997) (right to visa application adjudication); Yu v. Brown, 36 F. Supp. 2d 922, 930-31 (D.N.M. 1999) (right to Special Immigrant Juvenile application adjudication).

Mr. Ferreira Gomes' clear right to relief and Defendants' duty is especially defined in the present context: where Mr. Ferreira Gomes will be removed from the United States and rendered ineligible for T visa relief if Defendants do not immediately adjudicate his application. *See* 8 C.F.R. § 214.207(b). The T visa regulations specifically contemplate the issuance of a bona fide determination with an accompanying automatic stay. 8 C.F.R. § 214.205(a); (b)(2)(iii); (g)(1). The stay would remain in effect until a final decision on Mr. Ferreira Gomes' T visa application. 8 C.F.R. § 214.204(b)(2)(iii). If Mr. Ferreira Gomes is removed from the United States, he will no longer be eligible for T visa status at all. 8 C.F.R. § 214.207(b). Defendants have indicated their intent to refrain from enforcement actions and expedite bona fide determinations in precisely this situation. ICE was previously instructed to refrain "from taking civil immigration enforcement

action against . . . those known to have a pending application for [victim-based immigration] benefits." ICE Directive 11005.3. This instruction was not codified only because ICE was directed to coordinate with USCIS to seek the expedited adjudication of victim-based applications. See Federal Register, Vol. 89, No. 84 (April 30, 2024). ICE may still request expedited adjudications from USCIS on a case-by-case basis, see ICE Directive 11005.4, and Directive 11005.3 still remains on ICE's website.

No other adequate remedy beyond adjudication of his T visa application is available to Mr. Ferreira Gomes. He has sought habeas relief. He has filed a writ of mandamus to compel issuance of the bona fide determination. He has engaged congressional assistance. Through counsel, he has made numerous expedite requests to USCIS. None of these efforts have yielded a decision on his T visa application.

Accordingly, there is more than a mere possibility that Mr. Ferreira Gomes will prevail on his mandamus claim. See Nken, 129 S.Ct. at 1761.

### ii. Petitioner is Likely to Succeed on the Merits of his Due Process Claim

The Due Process Clause of the Fifth Amendment to the United States Constitution protects the right to due process of law and fundamental fairness in immigration proceedings. Reno v. Flores, 507 U.S. 292, 306 (1993). Whether administrative procedures "are constitutionally sufficient requires analysis of the governmental and private interests that are affected." Mathews v. Eldridge, 424 U.S. 319, 334 (1976). To determine whether there has been a violation of due process, the court must consider three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirement would

entail.

Mathews, 424 U.S. at 335.

Respondents' failure to adjudicate Mr. Ferreira Gomes' T visa application has violated his due process rights. Mr. Ferreira Gomes has a private liberty interest in obtaining a meaningful adjudication of his T visa application before his removal order is executed. See S.N.C. v. Sessions, No. 18 CIV. 7680 (LGS), 2018 WL 6175902, at *6 (S.D.N.Y. Nov. 26, 2018) (unpub.). The T visa is "a specific form of relief that Congress made available for victims of . . . human trafficking, including those with final orders of removal pending against them." Id. The automatic stay that takes effect once a bona fide determination is issued indicates Congress' intent in protected trafficking victims from removal. Removal itself "implicates substantial liberty interests." Fatty v. Nielsen, No. C17-1535-MJP, 2018 WL 3491278, at *1 (W.D. Wash. July 20, 2018) (unpub.).

Mr. Ferreira Gomes faces an immediate risk of "erroneous deprivation" of his liberty interest. Mathews, 424 U.S. at 332. If he is granted T status, he will be permitted to remain in the United States in nonimmigrant status. 8 C.F.R. § 214.11(d)(9). To the contrary, if he is removed before his T visa is adjudicated, he will be unable to pursue his application because he will no longer have the required physical presence. 8 C.F.R. § 214.11(g); see also Fatty, 2018 WL 3491278, at *2-3; You, Xiu Qing v. Nielsen, 321 F. Supp. 3d 451, 464-66 (S.D.N.Y. 2018) (without a stay of removal, the opportunity to submit applications to seek relief from removal would be "a mere illusion" (quoting Ceta v. Mukasey, 535 F.3d 639, 647 (7th Cir. 2008))). The only procedural safeguard to allow him to pursue his T visa application is a stay of removal.

The government's interest is not significantly affected by allowing Mr. Ferreira Gomes to remain in the United States while his T visa application is adjudicated. The congressional intent of the T visa is to provide protection to immigrant survivors of trafficking to compel them to come

forward and cooperate with law enforcement to combat said trafficking. See 8 U.S.C. § 7101(a). Congress specifically decided to allow T visa applicants to remain in the United States while their applications are adjudicated by implementing a process for a bona fide determination and a resulting automatic stay of removal. 8 C.F.R. § 214.205(a); (g)(1). Granting Mr. Ferreira Gomes a stay of removal directly aligns with the government's interest.[1]

Accordingly, there is more than a mere possibility that Mr. Ferreira Gomes will prevail on his due process claim. See Nken, 129 S.Ct. at 1761.

**B. Absent a Stay of Removal, Petitioner Faces Irreparable Harm**

Along with the likelihood of success on the merits, the irreparable injury inquiry is one of "the most critical" factors in adjudicating stay applications. Nken, 556 U.S. at 433. Absent a stay of removal, Petitioner will suffer irreparable harm for two main reasons. First, if deported, Petitioner's pending I-914 Application for T Nonimmigrant Status is pretermitted by operation of law, foreclosing the only viable form of relief that he has at present. Second, deportation would adversely affect Petitioner and his family, including his wife and his two United States citizen children, who are dependent upon Petitioner for financial and emotional support.

> **i.   Forced deportation will pretermit Petitioner's pending I-914 Application for T Nonimmigrant Status, which requires applicants to be physically present in the United States on account of trafficking.**

Petitioner's removal from the United States would render Petitioner's I-914 Application for T nonimmigrant status pretermitted by operation of law as he would not be able to satisfy the

---

[1] Additionally, like the plaintiff in Fatty, Mr. Ferreira Gomes has had a final order of removal for 23 years and has been consistently attending his ICE check-ins.

11

physical presence requirement in the statute. The Trafficking Victims Protection Act provides that survivors of human trafficking in persons may be eligible for nonimmigrant status if the applicant:

> (I) is or has been a victim of a severe form of trafficking in persons, as defined in section 7102 of title 22;
> (II) *is physically present in the United States*, American Samoa, or the Commonwealth of the Northern Mariana Islands, or at a port of entry thereto, *on account of such trafficking*, including physical presence on account of the alien having been allowed entry into the United States for participation in investigative or judicial processes associated with an act or a perpetrator of trafficking;
> (III)   (aa) has complied with any reasonable request for assistance in the Federal, State, or local investigation or prosecution of acts of trafficking or the investigation of crime here acts of trafficking are at least one central reason for the commission of that crime; (bb) in consultation with the Attorney General, as appropriate, is unable to cooperate with a request described in item (aa) due to physical or psychological trauma; or (cc) has not attained 18 years of age; and
> (IV) the alien 2 would suffer extreme hardship involving unusual and severe harm upon removal.

INA §101(a)(15)(T) (emphasis added In fact, the District Court for the District of Washington has acknowledged that T visa applicants have a liberty interest in preventing their removal and that if the petitioner were removed before his T visa was adjudicated, "he will be deprived of a viable defense to removability, … as physical presence in the United States is a condition of eligibility, his T Visa cannot be granted once he is removed." See Fatty v. Nielson, 2018 WL 3491278 (W.D. July 20, 2018). Unlike other immigration petitions where an applicant's continuous presence is not a requirement for approval, the T Visa cannot be granted once the applicant is removed from the United States. Here too Mr. Ferreira Gomes has a liberty interest in obtaining a meaningful determination on his T Visa application and in preventing his removal. If Respondent were to be removed from the United States prior to the final adjudication of his T visa application, he will no longer be able to satisfy the physical presence requirements.

### ii. Forced deportation would adversely affect Petitioner by separating him from his family

The specific facts of Petitioner's case demonstrate that Petitioner would suffer irreparable injury if forced to separate from his family in the United States. Mr. Ferreira Gomes entered the United States in 2001 at only 23 years old and has remained in the United States ever since. Since his arrival, he married his wife, Flavia Dorgal Gomes, and the couple have two U.S. Citizen children, Ayla de Souza Gomes (DOB: August 5, 2004) and Agatha de Souza Gomes (DOB: October 28, 2007). Ayla currently attends Wentworth University in Massachusetts, and Petitioner and his wife help her pay her tuition. Their younger daughter is 17 and looking at colleges now. Additionally, Petitioner has started his own business to support his family. Due to Petitioner's victimization and the devastating financial consequences thereof, Petitioner and his wife made the difficult decision to send their daughters to Brazil while he recovered financially. They have since improved their economic conditions and their daughters returned to live with them in the United States. They have been able to work on recovering as a family from the trauma of being separated as a result of Mr. Ferreira Gomes' suffering of labor trafficking. Mr. Ferreira Gomes has been in the United States for more than 20 years and has no ties that he could utilize if he had to return to Brazil; his wife also has not lived in Brazil in more than two decades, and similarly has no professional connections to Brazil. Removal from the United States would result in irreparable harm to Petitioner and Petitioner's family, who are already familiar with, and have suffered from, separation from one another.

For these reasons, the unique and substantial harms that Petitioner will suffer if removed to Brazil is qualitatively different from the harm that a petitioner would ordinarily suffer. Thus, Petitioner has shown that irreparable injury is the more probable or likely outcome.

C. **The Issuance of a Stay Will Not Substantially Injure the Government, and the Public Interest Lies in Granting Petitioner's Request for a Stay of Removal**

The Court found in <u>Nken</u> that the last two stay factors, injury to the other parties in the litigation and the public interest, merge in immigration cases because Respondent is both the opposing litigant and the public interest representative. <u>Nken</u>, 556 U.S. at 435. There is public interest in the "prompt execution of removal orders," which is heightened where the noncitizen "is particularly dangerous." <u>Id</u>. Moreover, the <u>Nken</u> Court also recognized the "public interest in preventing [noncitizens] from being wrongfully removed," which must weigh heavily in the Court's consideration. <u>See</u> <u>Nken</u>. 556 U.S. at 436. Here, neither these factors, nor any other factors, exist to suggest that Respondent or the public have any interest in his removal beyond the general interest noted in <u>Nken</u>.

      i.      **Neither the Government Nor the Public will be Injured.**

Petitioner is a 47-year-old native and citizen of Brazil with a viable form of relief available to him, strong family ties in the United States, and no criminal convictions. The Government will not be injured because there are significant options by which to release him with conditions such as GPS monitoring, more frequent check-ins, and all other means employed by the agency. Petitioner is not a flight risk as he has complied with all check-ins under his Order of Supervision for the last 12 years. He is seeking an affirmative form of relief with USCIS as the victim of a severe form of trafficking in persons. He has never missed an appointment with ICE or violated his Order of Supervision in any way. Additionally, he is the main provider for his wife and his two United States Citizen children. He is willing to comply with alternatives to detention such as more frequent check-ins or GPS monitoring.

The public interest lies in releasing Petitioner, as removing victims of human trafficking will have a chilling effect on the investigation and prosecution of trafficking within the United

States. Congress' intention with the TVPRA was to "combat trafficking in persons by ensuring just and effective punishment of traffickers and by protecting the victims of trafficking in persons." The congressional intent in providing protection to immigrant survivors of trafficking within the US was to compel victims to come forward, as their reluctance to cooperate with law enforcement drastically impacted the government's ability to combat human trafficking. Moreover, the public interest lies in the protection afforded to victims who bravely choose to come forward and identify as survivors and cooperate with the investigation thereof.

Respondent, accordingly, cannot make any particularized showing that granting Petitioner a stay of removal would substantially injure its interests or conflict with the public interest in preventing a wrongful removal.

## IV.  CONCLUSION

For these reasons, the Court should grant this motion for a stay of removal.

Respectfully submitted,

Dated: April 17, 2025        By:    */s/ Annelise M. J. de Araujo*
Annelise M. J. de Araujo,
for Petitioner Fabricio Ferreira Gomes
B.B.O. No. 669913
Araujo & Fisher, LLC
75 Federal St., Ste 910
Boston, MA 02110
(617) 716 - 6400
annelise@araujofisher.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Annelise M. J. de Araujo*
_____
Annelise M. J. de Araujo,
for Petitioner Fabricio Ferreira Gomes
B.B.O. No. 669913
Araujo & Fisher, LLC
75 Federal St Ste 910
Boston MA 02110
(617) 716 - 6400
annelise@araujofisher.com